**Rene BEYETTE and Ronald Beyette, Plaintiffs-Appellees,**

v.

**ORTHO PHARMACEUTICAL CORPO-RATION, Defendant-Appellant.**

No. 85–2002.

United States Court of Appeals, Sixth Circuit.

Argued March 19, 1987.

Decided July 22, 1987.

Rehearing Denied Sept. 7, 1987.

Wallson G. Knack, Warner, Norcross & Judd, Grand Rapids, Mich., William Richmond, Sidley & Austin, Chicago, Ill., Michael Davis, argued, for defendant-appellant.

William C. Gage, argued, Detroit, Mich., Gary A. Kozma, for plaintiffs-appellees.

Before JONES, KRUPANSKY and BOGGS, Circuit Judges.

KRUPANSKY, Circuit Judge.

Defendant-appellee Ortho Pharmaceutical Corporation (Ortho) appealed from a judgment for plaintiffs-appellees Rene Beyette (Beyette) and her husband Ronald Beyette (R. Beyette) entered pursuant to a jury verdict in this diversity action for personal injuries under Michigan law.

During all times relevant to this dispute, Ortho manufactured and distributed an intrauterine device (IUD) known as the Lippes Loop (Lippes Loop).

In 1972, following the birth of her first child, Beyette consulted her family practitioner, Dr. James Kaufman (Kaufman), for advice concerning future birth control.

Beyette had previously used both birth control pills and the "barrier method" of contraception, but had reservations about the continued implementation of both of those alternatives.[1] In light of her reservations, Beyette expressed an interest in utilizing an IUD. Accordingly, Kaufman fitted her with a Lippes Loop on May 2, 1972.

Prior to inserting the IUD, Kaufman had examined the Ortho product information sheet which accompanied the loop. The product information sheet predicted that the incidence of pelvic inflammatory disease (PID) among Lippes Loop users would be "essentially the same as that which would have occurred without it."[2] At the time of insertion, Kaufman provided Beyette with a copy of Ortho's patient information leaflet.[3]

The Lippes Loop which Kaufman had inserted in May of 1972 was removed by another doctor on July 27, 1973. Kaufman inserted a second loop on November 7, 1973. Kaufman removed the second loop on April 8, 1974 to permit Beyette to become pregnant. Beyette conceived shortly thereafter and gave birth to a second child on March 4, 1975. Beyette had not experienced any problems with either the first or second loop and did not contend in this action that either the first or second Lippes Loop was related in any way to the physical conditions she experienced in 1979.

The circumstances surrounding the insertion of the third Lippes Loop on May 15, 1975, two months after the birth of Beyette's second child, are easily summarized and disclose the following sequence of events. The package insert accompanying the third Lippes Loop in May of 1975 was essentially the same as those which had accompanied Beyette's first and second loops in 1972 and 1973. Kaufman testified that since Beyette had not experienced any complications with her previous use of the IUD, it was not likely that he would have engaged in any extensive discussions with her concerning the insertion and use of the second and third loops.

In late 1977, pursuant to a directive from the Food and Drug Administration (FDA), Ortho altered the product literature accompanying the Lippes Loop to warn of the reported increased risk of pelvic infection and PID which had been attributed to the use of IUD's. Ortho brought the revised product literature to Kaufman's attention by letter dated November 7, 1977. The revised product literature warned of the increased incidence of pelvic infection associated with IUD use and further stated that "[u]se of an IUD in those patients with cervicitis should be postponed until treatment has cured the infection." Kaufman testified that by December of 1977 he realized that there had been a change in the package insert accompanying the loop. However, he conceded that he had not advised Beyette of the amendments in the product literature. At trial, Beyette testified that she would have had the device

---

1. Early in her marriage, Beyette had used birth control pills. However, she ceased using the pills in 1971 due to her concern about potential dangerous side effects. Thereafter, Beyette employed the "barrier method" of contraception, which involved the use of both condoms and contraceptive foam. However, this method of birth control did not prevent the conception of her first child. Accordingly, Beyette was concerned about the effectiveness of that form of birth control.

2. Under the "side effects" heading, the product information sheet explained:

   IV. *Pelvic Inflammatory Disease*
   Lippes reported 23 patients with tentative diagnoses or histories of pelvic inflamatory disease among 1673 patients fitted with LIPPES LOOP Interuterine Double-S. Of these 23, the tentative diagnosis was unsupported by laboratory corroboration in 8; 3 were found to have urinary tract infections; 1 had appendicitis; 1 had regional iletis; and 1 had post operative wound infection with septicemia following a posterior colporraphy.
   The remaining 9 cases recovered promptly; in half of these cases, the device was not removed.
   The base line rate of pelvic inflamatory disease in the population studied is not available. It is estimated that the rate reported with LIPPES LOOP Intrauterine Double-S in place is essentially that which would have occurred without it.

3. The patient information leaflet contained a statement that "[y]ou have been fitted with the latest development in a method of family planning that has been in use for over forty years. More than a million women throughout the world have used this method successfully."

removed if she had been advised of the modifications in the product literature.

On July 24, 1978, Kaufman examined Beyette and diagnosed her physical complaints as "severe cervicitis." At that time, Kaufman did not counsel Beyette about removing the loop because he "did not think that cervicitis was enough reason to pull it out." Kaufman examined Beyette four more times between July of 1978 and January of 1979 and failed to advise her of the relationship between IUD use and pelvic infection.

On June 20, 1979, Beyette was admitted to Paul Oliver Memorial Hospital in Frankfort, Michigan as an emergency patient. Kaufman diagnosed her as suffering from acute PID and removed the Lippes Loop. Because Beyette's illness had progressed to a critical stage where surgical treatment was required, Kaufman arranged for Beyette's transfer and care of several specialists at Munson Hospital in Traverse City, Michigan. On June 29, 1979, a total abdominal hysterectomy was performed upon Beyette during which her entire uterus, fallopian tubes and ovaries were removed through her abdominal wall. An incidental appendectomy was performed in conjunction with the surgery.

On May 7, 1982, Beyette and her husband initiated this action against Ortho in federal district court, alleging (1) that Ortho failed to warn Beyette of the risk of PID associated with use of the Lippes Loop, and (2) that Ortho had breached the express warranties of product safety contained in its product information sheet and patient information leaflet; and (3) that Ortho was also liable to her husband for loss of consortium. The matter was tried to a jury which returned a verdict of $500,-000 in favor of Beyette and $63,000 in favor of her husband. Ortho filed a motion for judgment notwithstanding the verdict which was denied by the trial court. This timely appeal followed.

On appeal, Ortho argued that there was insufficient evidence to support a verdict on Beyette's cause of action charging a failure to warn her of the potential hazards associated with use of the Lippes Loop. To recover for failure to warn under Michigan law, a plaintiff must prove each of four elements of negligence: (1) that the defendant owed a duty to the plaintiff; (2) that the defendant violated the duty; (3) that the defendant's breach of duty was the proximate cause of the injury to the plaintiff; and (4) that plaintiff suffered damages. *Pettis v. Nalco Chemical Co.,* 150 Mich.App. 294, 388 N.W.2d 343, 346–47 (1986) *citing Warner v. General Motors Corp.,* 137 Mich.App. 340, 357 N.W.2d 689 (1984).

A manufacturer of a pharmaceutical product has a duty to warn the medical profession, not the patient, of any risks inherent in the use of the product which the manufacturer knows or should know to exist. *Smith v. E.R. Squibb & Sons, Inc.,* 405 Mich. 79, 273 N.W.2d 476, 479 (1979). A manufacturer has a continuing duty to inspect and test its product during the course of manufacture and to warn the medical profession of any side effects associated with the product's use. *Muilenberg v. Upjohn Co.,* 115 Mich.App. 316, 320 N.W.2d 358, 366 (1982); *Taylor v. Wyeth Laboratories, Inc.,* 139 Mich.App. 389, 362 N.W.2d 293, 296 (1984). If warnings or instructions are required, the information provided must be "adequate, accurate and effective." *Taylor,* 362 N.W.2d at 297 *citing Antcliff v. State Employees Credit Union,* 414 Mich. 624, 327 N.W.2d 814 (1982).

At trial, Beyette charged that the warnings that she received prior to the insertion of her third Lippes Loop in 1975 were inadequate because they failed to report the increased incidence of PID in IUD users. Ortho responded that the 1975 warnings, even if considered to be inadequate, were not the proximate cause of Beyette's injuries because (1) in accordance with its continuing obligation to warn of known side effects, Ortho had issued adequate warnings to Kaufman in 1977, and (2) in light of the 1977 warnings about cervicitis, pelvic infection and PID, Kaufman's failure to remove the Lippes Loop after discovering Beyette's "severe cervicitis" in July of 1978

constituted an intervening, superseding cause of Beyette's injuries.

 Upon careful consideration of the record, this court concludes that Ortho's failure to warn of the increased risk of PID associated with the Lippes Loop prior to the insertion of Beyette's third loop in 1975 was not the proximate cause of her injuries. The product literature issued by Ortho in 1977 reported that there was a significant risk of PID associated with the use of IUDs generally and the literature incorporated specific warnings concerning the relationship between cervicitis, pelvic infection and PID and the use of IUDs. It is also apparent from the transcript that by December of 1977 Kaufman knew that the product literature had been modified to include warnings of the increased incidence of PID. Nonetheless, Kaufman failed to inform Beyette of the increased risks of pelvic infection and failed to remove the loop upon a diagnosis of "severe cervicitis." Accordingly, this court cannot conclude that the Ortho's failure to issue adequate warnings prior to the insertion of Beyette's third Lippes Loop proximately caused her injuries. *See Plummer v. Lederle Laboratories*, 819 F.2d 349 (2d Cir.1987).

 Ortho next asserted that the district court erred in submitting Beyette's express warranty claims to the jury. At trial, Beyette attempted to prove that Ortho breached express warranties by misrepresenting the safety of its product with assurances in its product literature that "[i]t is estimated that the rate [of PID] reported with Lippes Loop Intrauterine Double-S in place is essentially that which would have occurred without it" and that "more than a million women throughout the world have used this method successfully."

In *Carpenter v. Alberto Culver Co.*, 28 Mich.App. 399, 184 N.W.2d 547, 549 (1970), the Michigan court noted that "[r]epresentations which merely express the seller's opinion, belief, judgment, or estimate do not constitute a warranty." Because the prediction concerning the expected rate of PID associated with use of the loop was, by its own terms, an "estimate", it did not constitute an express warranty. Moreover, contrary to Beyette's assertions, the statement that more than a million women had used the IUD method successfully did not, in any way, assert that the IUD method of contraception was risk free. Accordingly, the district court erred in submitting the express warranty claims to the jury.

For the reasons stated above, the judgment of the district court is REVERSED and this matter is REMANDED to the trial court for the entry of judgment in favor of Ortho.