*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

URBAN INVESTMENT CO., LLC., FR. THOMAS
E. URBAN, Individually and as the Personal
Representative of the ESTATE OF WILLIAM
URBAN, and JUANITA URBAN,

        Plaintiffs-Appellants,

v

ARBOR HILLS LANDFILL, INC.,

        Defendant-Appellee.

UNPUBLISHED
September 19, 2025
11:14 AM

No. 372600
Washtenaw Circuit Court
LC No. 24-000818-NZ

Before: K. F. KELLY, P.J., and PATEL and FEENEY, JJ.

PER CURIAM.

In this negligence and trespass action, plaintiffs-appellants, Urban Investment Co., LLC; Fr. Thomas E. Urban, individually and as the personal representative of the Estate of William Urban; and Juanita Urban, appeal as of right the trial court order granting summary disposition in favor of defendant-appellee, Arbor Hills Landfill, Inc. We reverse and remand for further proceedings.

## I. FACTS

This case involves the flooding of two of plaintiffs' properties in Northville, Michigan—a house located at 7750 Chubb Road and a house located at 7742 Chubb Road—located downhill and to the west of defendant's landfill.

On the night of August 23, 2023, and into the early morning hours of August 24, 2023, several feet of toxic water and sludge flooded plaintiffs' properties. Plaintiffs detailed the damage to their properties as follows:

> The basement of the 7742 House needed substantial repairs due to water damage and the toxic contamination. Half of the 7750 House needed to be torn apart and rebuilt because environmental professionals deemed the house unlivable due to the toxic chemicals originating from the Landfill. During those renovations,

Juanita Urban, the family's 82-year-old matriarch, was displaced from her home for four and a half months because it was not safe for her to live there. At least two full-sized dumpsters of personal property needed to be discarded, including expensive electronic appliances and irreplaceable family artifacts, due to damage from the water, sludge, and toxins.

Plaintiffs additionally explained that while Fr. Urban was attempting to help Juanita recover her personal property from the 7750 house, he "slipped on the accumulated sludge and broke his ankle, incurring medical and other injury-related bills, suffering pain, and diminishing his quality of life during the healing of the injury and post-injury."

In July 2024, plaintiffs filed a complaint against defendant, asserting two claims of negligence—one count concerned property damage and the other count concerned Fr. Urban's personal injuries—and one claim of trespass. Notably, the complaint contained over 100 pages of exhibits. Plaintiffs alleged that the flooding was caused by defendant's failure to maintain an effective stormwater management system despite receiving ample notice that it posed an ongoing threat to nearby properties.

In lieu of filing an answer to plaintiffs' complaint, defendant moved for summary disposition under MCR 2.116(C)(8) and (C)(10). Defendant argued that: (1) the flooding in this case was the result of an intervening cause, namely a 500-year storm, which defendant did not have a duty to protect plaintiffs from; and (2) plaintiffs' trespass claim was improper because plaintiffs did not claim that defendant intentionally made an intrusion onto their land. Plaintiffs responded, arguing that the motion was premature, the motion was not supported by admissible evidence, material questions of fact remained regarding the severity of the storm and defendant's failure to maintain its stormwater management system, and defendant knew or reasonably should have known that its failure to maintain the stormwater management system would result in a flood.

A brief hearing on defendant's motion was held in September 2024. After the parties made their arguments, the trial court determined that "a 500-year rain" occurred constituting an intervening cause. Accordingly, the trial court granted summary disposition in defendant's favor, reasoning that plaintiffs "fail[ed] to state a claim that Defendant intentionally entered Plaintiffs' land and no reasonable juror could find Defendant was responsible for the 500-year event."[1] Plaintiffs now appeal.

## II. PRESERVATION AND STANDARD OF REVIEW

Because the parties raised these issues before the trial court, they are preserved for appellate review. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

"We review de novo a trial court's decision on a motion for summary disposition, reviewing the record in the same manner as must the trial court to determine whether the movant was entitled to judgment as a matter of law." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295

---

[1] The trial court did not indicate whether it granted defendant's motion under MCR 2.116(C)(8) or (10).

Mich App 431, 440; 814 NW2d 670 (2012). "Our review is limited to the evidence that had been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009). If the trial court did not indicate whether it granted the defendant's motion pursuant to MCR 2.116(C)(8) or (10), but the trial court considered documentary evidence beyond the pleadings, we review the decision as having been granted pursuant to MCR 2.116(C)(10). *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 270; 826 NW2d 519 (2012).

MCR 2.116(C)(10) provides that the trial court may grant summary disposition in favor of the moving party when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "In reviewing a motion brought under MCR 2.116(C)(10), we review the evidence submitted by the parties in a light most favorable to the nonmoving party to determine whether there is a genuine issue regarding any material fact." *Cuddington*, 298 Mich App at 270. "A genuine issue of material fact exists when the record leaves open an issue on which reasonable minds could differ." *Id*. at 270-271 (quotation marks and citation omitted).

## III. SUMMARY DISPOSITION

On appeal, plaintiffs argue that the trial court erred by prematurely granting summary disposition in defendant's favor when genuine disputes of material fact remained. We agree.

## A. NEGLIGENCE CLAIMS

"To establish a prima facie case of negligence, a plaintiff must satisfy the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, 333 Mich App 234, 243; 964 NW2d 50 (2020) (quotation marks and citation omitted).

## 1. DUTY OF CARE

"A duty of care may be one that the defendant owes specifically to the plaintiff, or it may be one that the defendant owes to the general public, of which the plaintiff is a member." *Id*. "While one person generally does not have an obligation to help or protect another, a duty of care may arise by way of statute, a contractual relationship, or the common law." *Id*. "The common law imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Id*. at 243-244 (quotation marks and citation omitted).

Defendant argues that plaintiffs cannot "create a fact question that [defendant] had a duty to design a water retention system to accommodate a flood of the magnitude that occurred on August 24, 2023." In making this argument, defendant relies on short excepts from the Michigan Department of Transportation (MDOT) Stormwater Drainage Manual and the Southeast Michigan Council of Governments (SEMCOG) Low Impact Development Manual for the proposition that

"the law only requires a retention basin designed to accommodate a 100-year storm event."[2] Defendant goes on to explain that an MLive news article classified the storm as a 500-year event, and an affidavit from Dennis F. Kahlbaum, a professional Meteorologist and Consultant, classified the storm as a 200-year event.[3]

Plaintiffs first contend that there is a material question of fact regarding the severity of the storm. Plaintiffs argue that the MLive article constituted inadmissible hearsay, and even if it was admissible, it did not demonstrate that a 500-year storm event impacted the landfill or plaintiffs' properties. We acknowledge that courts have consistently held that newspaper articles are inadmissible hearsay unless they fall under a recognized exception to the hearsay rule, see *Baker v Gen Motors Corp*, 420 Mich 463, 511-512; 363 NW2d 602 (1984); *Edwards v Detroit News, Inc*, 322 Mich App 1, 4 n 2; 910 NW2d 394 (2017), and (2) the MLive article did not include the city of Northville in the described storm boundary. Plaintiffs also contend that Kahlbaum's vague reference to research sources and data did not satisfy the requirements of expert witness testimony under MRE 702. In the trial court, plaintiffs drew attention to the fact that none of the sources Kahlbaum cited supported his conclusion that the storm qualified as a 200-year rainfall event, explaining as follows:

---

[2] Defendant attached these excepts to its motion for summary disposition. The MDOT Stormwater Drainage Manual indicated that the design peak outlet rate for a detention basin's emergency overflow is related to a 100-year event, and the SEMCOG Low Impact Development Manual stated that "[d]etention basins should be designed to mitigate runoff peak rates for the one-year through 100-year rainfall events."

[3] The MLive article and Kahlbaum's affidavit were also attached to defendant's motion for summary disposition. The MLive article was titled: "Parts of Washtenaw County get almost 5 inches of rain in 3 hours during a 500-year storm." The article stated that "[t]he unusually heavy downpour qualifies as a '500-year' storm for a three-hour time period, meaning such an event has a 0.2% chance of happening at any given time, according to the Washtenaw County Water Resources Commissioner's Office." Notably, the article stated that the "heavy rains seemed to stretch somewhere between Scio Township all the way west to Canton," and reports of deluges were received "from a north-south area stretching from the middle of Salem Township all the way south to Dundee . . . ." Although Northville—the city in which plaintiffs' properties are located— is near this area, it is slightly north-west of the discussed boundary.

Kahlbaum's affidavit indicated that he obtained and reviewed "weather observations from the National Weather Service (NWS), CoCoRaHS - Community Collaborative Rain, Hail & Snow Network, and The Weather Underground, conduct[ed] weather research, and review[ed] NWS radar data for the area that covers [plaintiffs' residences] and the landfill . . . ." Kahlbaum's investigation determined that this area experienced 4.9 inches of rain between 1:00 a.m. and 6:00 a.m. on August 24, 2023. Importantly, Kahlbaum stated that "[a]ccording to the Precipitation-Frequency Atlas of the United States, the 4.5" in 3 hours rate exceeds the 200-year event classification for Southeastern Michigan."

Data from NWS shows Northville township—where the Properties are located—received only 1.15 inches of rain on August 24. See Ex. 9. The historical weather data generated by the Weather Underground for August 24, 2023 for the Properties' and Arbor Hills' zip code, 48168, comes from the Detroit Metro Airport, about 26 miles away, and therefore cannot be an accurate depiction of the weather at the Properties and Arbor Hills. See Ex. 10, Screenshot of the Weather Underground results when 48168 zip code is entered. And there is no data from CoCoRaHS regarding the amount of rainfall anywhere in Washtenaw County on August 24, 2023, between 1 am and 6 am. See Ex. 11, Screenshot of CoCoRaHS data in Washtenaw County.

We conclude that the evidence plaintiffs submitted created a genuine issue of material fact regarding the severity of the storm and the credibility of Kahlbaum's conclusions.

Plaintiffs further argue that "[t]he MDOT manual relates to drainage systems along *roadways*, not landfill's systems for preventing contaminated runoff," and the SEMCOG manual "provides recommendations for unspecified 'low impact development' and has no apparent applicability to [defendant's] stormwater management system."[4] Moreover, plaintiffs argue that even if these manuals did govern defendant's activities, the existence or nonexistence of a statute or regulation does not alone determine whether defendant owed plaintiffs a duty of care.

A duty of care may arise by mandate of a statute or by common law, but "the fact that defendant's conduct may have been in violation of a statute does not in and of itself shed light on whether defendant owed plaintiff a duty of care[.]" *Cipri v Bellingham Frozen Foods, Inc*, 235 Mich App 1, 15-16; 596 NW2d 620 (1999). Notably, neither party in this case has presented an applicable statute; instead, defendant has presented two regulation manuals that: (1) do not appear to be directly on point, and (2) contradict the "25-year event" stormwater-management-system standard previously placed upon defendant by the Department of Environment, Great Lakes, and Energy [EGLE]. Therefore, we will analyze defendant's duty of care under common law. See *id*. ("The common law imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others.") (quotation marks and citation omitted).

## 2. BREACH OF DUTY

Whether a party breached its duty "is a question of fact for a jury and is not an appropriate consideration for summary disposition." *Spikes by Simmons v Banks*, 231 Mich App 341, 355; 586 NW2d 106 (1998). In this case, the trial court did not reach the question of whether defendant breached its duty of care.

---

[4] We note that if defendant is correct in its assertion that the MDOT and SEMCOG manuals require that "a retention basin [must be] designed to accommodate a 100-year storm event," then it is peculiar that the May 2023 Consent Order, authored by the Department of Environment, Great Lakes, and Energy, only required defendant to ensure that its stormwater management system could "handle a 24-hour, 25-year storm event" by July 16, 2023.

### 3. DAMAGES

Neither party contests damages in this case. Plaintiffs presented ample photographic evidence of property damage as well as affidavit testimony detailing Fr. Urban's personal injuries.

### 4. CAUSATION

"The causation element of a negligence claim encompasses both factual cause (cause in fact) and proximate, or legal, cause." *Powell-Murphy*, 333 Mich App at 245. "Factual cause generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred. Proximate cause, by contrast, normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id.* at 245-246 (quotation marks and citation omitted). "A plaintiff must necessarily establish factual cause in order to establish proximate cause. While factual causation may be established with circumstantial evidence, the evidence must support reasonable inferences of causation, not mere speculation." *Id.* at 246 (quotation marks and citations omitted). Accordingly, "to provide circumstantial evidence that permits a reasonable inference of causation, a plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id.* (quotation marks and citation omitted). "The mere possibility of causation is insufficient to survive summary disposition." *Id.*

Importantly, "[a]n intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was reasonably foreseeable." *McMillian v Vliet*, 422 Mich 570, 576; 374 NW2d 679 (1985) (quotation marks and citation omitted). But, "[a]n intervening cause is not an absolute bar to liability if the intervening event is foreseeable, though negligent or even criminal." *Taylor v Wyeth Laboratories, Inc*, 139 Mich App 389, 402; 362 NW2d 293 (1984). "The question of whether an intervening act of negligence is a superseding cause, relieving the defendant of liability, is a question for the jury." *Williams v Johns*, 157 Mich App 115, 120; 403 NW2d 516 (1987).

In this case, the trial court appeared to grant summary disposition in defendant's favor on the basis that plaintiffs could not prove causation. The trial court found that "a 500-year rain" occurred constituting an intervening cause, and "no reasonable juror could find Defendant was responsible for the 500-year event." On appeal, plaintiffs argue that the trial court improperly focused on whether defendant caused the *storm*, not whether defendant caused the *flood*; therefore, the trial court ignored conflicting evidence regarding whether defendant's property would have flooded from a less severe storm, i.e., whether the flood was foreseeable. We agree.

In the trial court, plaintiffs argued that that the flooding in this case resulted from defendant's failure to properly maintain its stormwater management system, not from natural rain accumulation, explaining that: (1) there were portions of the properties lower than the flooded area that did not flood, (2) "only the portions of the Properties that were in the path of the water and sludge from [the landfill] flooded," and (3) defendant had a history of noncompliance with environmental laws due to the failure of its stormwater management system. Plaintiffs presented evidence that defendant had been informed of its deficient stormwater management system in numerous complaints and notices. In 2019, Michigan's Department of Environmental Quality

performed an industrial stormwater inspection at the landfill, noting that "sediment and refuse in the storm water discharge are violations of the facility's [certificate of coverage] and the General Permit." Consequently, in 2020, EGLE filed a lawsuit against defendant, which resulted in a consent judgment ordering defendant to investigate the adequacy of its stormwater management system and implement necessary changes.[5] "After entering into the Consent Judgement, and just a year before the flood in this case, [defendant] reported 'a leachate release at the Landfill . . . caused by severe thunderstorms on the evening of August 4, 2022, which in turn led to localized flooding and power outages.' " Another "Administrative Consent Order was necessitated by the August 2022 flood, as well as other, continued [Natural Resources and Environmental Protection Act (NREPA)] violations."

We conclude that the evidence plaintiffs submitted created a genuine dispute of material fact regarding whether defendant: (1) failed to maintain its stormwater management system, and (2) had notice that its stormwater management system posed an ongoing threat to nearby properties. Whether defendant's conduct—in the maintenance (or lack of maintenance) of its stormwater management system—was a proximate cause of plaintiffs' injuries is a question for the jury. See *id*. Therefore, the trial court erred by granting summary disposition in defendant's favor.

5. PREMATURITY

Plaintiffs further argue that the trial court erred by prematurely holding, before discovery had been completed, that no genuine issue of material fact had been raised. We agree.

"Generally, summary disposition under MCR 2.116(C)(10) is premature if it is granted before discovery on a disputed issue is complete." *Powell-Murphy*, 333 Mich App at 253 (quotation marks and citation omitted). A party may not simply allege that summary disposition is premature; instead, "[t]he party must clearly identify the disputed issue for which it asserts discovery must be conducted and support the issue with independent evidence. The dispositive inquiry is whether further discovery presents a fair likelihood of uncovering factual support for the party's position." *Id*. (quotation marks and citations omitted). "[S]ummary disposition before the close of discovery is appropriate if there is no reasonable chance that further discovery will result in factual support for the nonmoving party." *Colista v Thomas*, 241 Mich App 529, 537-538; 616 NW2d 249 (2000).

As previously stated, plaintiffs provided evidence contrasting: (1) the severity of the storm, and (2) defendant's role in the flooding through its poor maintenance of the stormwater

---

[5] On appeal, defendant cursorily states that plaintiffs cannot rely on a prior lawsuit that resulted in a consent judgment, but defendant has abandoned this issue by failing to adequately brief it. See *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339-340; 662 NW2d 854 (2003) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue."). Nevertheless, we note that consent orders from prior cases may be admissible as other-act evidence, under MRE 404(b)(2), to prove "motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident."

management system.  Because there was a reasonable chance that further discovery into these issues could have resulted in factual support for plaintiffs' claims, summary disposition was premature.  See *id*.

## B. TRESPASS CLAIM

"Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Boylan v Fifty Eight LLC*, 289 Mich App 709, 723; 808 NW2d 277 (2010) (quotation marks and citation omitted).  "A 'direct or immediate' invasion for purposes of trespass is one that is accomplished by any means that the offender knew or reasonably should have known would result in the physical invasion of the plaintiff's land." *Id*. (quotation marks, citation, and alteration omitted).  "Surface-water diversion may effect an intrusion onto land." *Id*.

Defendant argues that the trial court properly dismissed plaintiffs' trespass claim because plaintiffs failed to prove that defendant intentionally entered plaintiffs' land.  Defendant explains that because plaintiffs' properties are located downhill from defendant's property, plaintiffs bear the natural servitude of water flowing from defendant's property.

"It has been the settled law of this State for more than a century that the natural flow of surface waters from the upper, dominant estate forms a natural servitude that encumbers the lower, servient estate." *Wiggins v City of Burton*, 291 Mich App 532, 563; 805 NW2d 517 (2011) (quotation marks and citations omitted).  "The owner of the lower, servient estate must bear this natural servitude, and is bound by law to accept the natural flow of surface waters from the upper, dominant estate." *Id*.  "It is similarly well settled, however, that the owner of the upper estate has no right to increase the amount of water that would otherwise naturally flow onto the lower estate." *Id*. (quotation marks and citation omitted).

In this case, plaintiffs' properties are located downhill from defendant's property.  But, for the reasons previously discussed, there is a genuine dispute as to whether the flow of water in this case was *natural* or the result of a poorly maintained stormwater management system.  There is also a genuine dispute as to whether defendant knew or reasonably should have known that its actions could lead to a flood.  Therefore, the trial court improperly dismissed plaintiffs' claim for trespass.  See *Boylan*, 289 Mich App at 723.

## IV. CONCLUSION

The trial court erred by prematurely granting summary disposition in defendant's favor when genuine disputes of material fact remained.  We reverse the trial court's grant of summary disposition and remand for further proceedings.  We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Sima G. Patel
/s/ Kathleen A. Feeney