## WEISSERT *v*. CITY OF ESCANABA.

1. NEGLIGENCE—RES IPSA LOQUITUR.

    The rule of *res ipsa loquitur* is not in vogue in this State.

2. ELECTRICITY—NEGLIGENCE—INSTRUCTIONS—INJURIES TO MINORS— RES IPSA LOQUITUR.

    In action to recover damages for injuries sustained by 12-year-old boy when he took hold of an electric power line maintained by municipal light plant on highway through densely wooded country outside of city, late in the afternoon of a day on which a severe rain and windstorm had been raging for about nine hours, which was then suspended about two feet from the ground, instruction to jury which permitted it to find there had been an accident by reason of the power line being down and that some one was injured and that the owner of the agency was responsible therefor unless it had made such inspection and used such care as the jury thought should be made in handling electric current *held*, error.

3. SAME—RAIN AND WINDSTORM—INSPECTION.

    In action for damages arising from injuries to 12-year-old boy who took hold of an electric power line then suspended about two feet from the ground, late in the day after a severe rain and windstorm had been raging about nine hours, where no question of improper construction through densely wooded territory is raised, testimony showing monthly inspections had been made showed the exercise of reasonable care on part of defendant owner in absence of showing of special circumstances requiring inspection and earlier repair than was made.

4. SAME—LIABILITY FOR PERSONAL INJURIES—NEGLIGENCE.

    While those engaged in generating and distributing electricity are held to a high degree of care for the protection of those liable to come in contact with such force, their liability for personal injuries either to public or patrons is governed, not by principles of insurance of safety, nor of contracts, but by the simple rules of negligence.

Rule regarding negligence in cases of harmful instrumentalities, see 2 Restatement, Torts, § 291.

In 2 Restatement, Torts, § 365, there is set out the rule regarding opportunity to discover and repair dangerous defects, although the rule relates to the possessors of land.

Function of court in defining standard of conduct, see 2 Restatement, Torts, § 285.

5. Negligence—Proximate Cause Defined.

The proximate cause of an injury has been defined as that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury and without which such injury would not have occurred.

6. Electricity—Distribution Equipment—Actionable Negligence.

Generally an electric company will not be held liable for personal injuries due to its negligence in the maintenance of its distribution equipment unless, under all the circumstances, the accident might reasonably have been foreseen by a person of ordinary intelligence and prudence, and it is not enough to prove that the accident is a natural consequence of the negligence but it must also be shown to have been a probable consequence.

7. Same—Storms—Negligence.

If a storm that could not be anticipated, or reasonably foreseen, is the cause of an electric power line falling, and the electric company is not negligent in allowing it to remain for an unreasonable length of time, it will not be liable for injuries resulting.

8. Same—Storm—Reasonable Inspection—Negligence—Directed Verdict.

In action for damages for personal injuries to 12-year-old boy who took hold of an electric power line, then suspended about two feet from the ground, which was maintained by municipal light plant and inspected monthly on the highway in densely wooded and sparsely settled territory, late in the afternoon of a September day on which a rain and windstorm had been raging since early morning, where it does not appear how long the wire had been down or that it was reasonably forseeable that large limb from nearby birch tree would fall upon it, the question of defendant's negligence was not a question for the court to submit to the jury and it was error for the court to do so.

Appeal from Delta; Bell (Frank A.), J. Submitted May 15, 1941. (Docket No. 90, Calendar No. 41,610.) Decided June 30, 1941.

Case by William Weissert, guardian of Daniel Weissert, a minor, against City of Escanaba for personal injuries to plaintiff's ward. Verdict and judgment for plaintiff. Both parties appeal. Re-

versed and remanded for entry of judgment for defendant.

*L. J. Archambeau,* for plaintiff.

*Denis McGinn,* City Attorney (*Herbert J. Rushton,* of counsel), for defendant.

CHANDLER, J.   The plaintiff herein was awarded a verdict by a jury against the city of Escanaba in the Delta county circuit court as damages for personal injuries received by him when he took hold of an electric light wire of defendant's system on September 12, 1936. At this time plaintiff was 12 years of age.

For reasons which will hereinafter be disclosed, we are adopting the evidence offered by plaintiff, together with some of the undisputed evidence of defendant, as a statement of facts which were before the court and jury upon the trial of the issues here involved and which are to control us in the determination of the questions raised on this appeal.

Defendant, city of Escanaba, owns its own municipal light plant and also has an extension which runs outside of the city for a distance of several miles. Such extension lines run through Ford River township on what is termed the Lake Shore road, being a paved highway, M-35, on which highway plaintiff lives. After leaving the city, defendant's lines run largely through densely wooded territory within the highway right of way practically the entire distance. The highway right of way is 100 feet in width and in many places the wires and poles of defendant are beneath branches of trees. The electrical engineer and one of the State highway men, according to the undisputed testimony, patrolled this line at least once a month, and when the en-

gineer discovered trees or branches that appeared to him dangerous, he would tell the highway man and the department would send men out to cut them off, or sometimes they would give defendant permission to cut them. This testimony was further to the effect that the city did not cut trees or branches in the highway without permission of that department. At the point of the accident, the defendant's poles and lines were about 35 feet from the center of the paved highway.

On the day of the accident the plaintiff was on his way home from school and when about 1¾ miles from home, he saw a wire suspended over a driveway leading from the main highway to a lake cottage. The wire was about 2 feet above the ground and about 20 feet from the traveled portion of the highway. He walked up to the wire, picked it up and received a severe shock and serious burns. He said he knew it was an electric light wire, one that ran right by his home and from which his parents' home had been furnished electricity ever since he was born. He said he did not think the wire was dangerous and never knew before that one could get a shock from a high power line.

Near the place of the accident and about 5 feet from the electric line, there was a birch tree about 16 to 18 inches in diameter and of a height of 40 to 50 feet. Immediately after the accident it was discovered that a limb was broken off the birch tree and was lying beneath the wire "so it appears that the limb was what knocked the wire off the pole." This limb was about 6 inches thick and weighed about 60 pounds. Plaintiff's testimony relative to the condition of the limb and tree immediately after

the accident was given by his father and is as follows:

"*A.* I noticed that it was rotten and that there was a limb fell off of it; a big heavy limb.

"*Q.* How long?

"*A.* That was a dead birch tree and it was about 16 to 18 inches; about stump height like a lumberjack cuts off a stump. It was kind of a stubby tree and it didn't grow up very high before it began to branch out, and the limb was laying right beneath the wire, so it appears that that limb was what knocked the wire off of the pole.

"*Q.* How high was this tree?

"*A.* Well, *the top of the leaves* would be about 45 feet. The wires are on 30-foot poles out there and there is about 5 feet of those in the ground; 4 or 5 feet.

"*Q.* Did the tree extend then over the wires, the branches?

"*A.* It was higher than the wires.

"*Q.* How close to the wire was the tree or the branches?

"*A.* Oh, about 5 feet from the line. * * *

"I examined the branch. It was pretty heavy and there was a core to it yet, but it was rotten.

"*Q.* By core what do you understand by core?

"*A.* Well, there isn't much core to a tree.

"*Q.* I don't mean the natural core, I mean the unrotten part.

"*A.* Well, it was still solid enough to hold the bark. Of course, white birch when it gets rotten you can pick it and all the insides fall out, but this wasn't as rotten as that. I would say that piece of branch weighed 60 pounds.

"*Q.* How long, to your knowledge, was that tree there?

"*A.* Well, that was the first time I ever noticed it.

"*Mr. Rushton:* It must have been there quite a while. It was two foot through.

"*Q.* (By *Mr. Archambeau*) : What color was that tree?

"*A.* White, white birch, the tree is still there.

"*Q.* It is below the wires now?

"*A.* Well, when the accident happened there were still some limbs that were higher than the wires. I haven't looked at it now for probably six months."

On the day of the accident a severe rain and windstorm had been raging from 6 or 7 o'clock in the morning until the time of the accident, which was around 4 o'clock in the afternoon.

The record discloses that the first notice or knowledge that defendant had that there was trouble with its line was a telephone message from plaintiff's father immediately after the accident, and that the city electrician, Mr. Lindquist, with' two employees went at once to the scene of the accident and made the necessary repairs.

Mr. Lindquist testified to seeing the birch tree in question and the limb that was broken therefrom which evidently caused the wire to break, fall or sag. He said the limb was decayed; that there was nothing on the outside so to indicate; that there was nothing about the appearance of the birch tree in question that would indicate to him that it was dead; that if a birch tree was not in leaf when the rest were, he would assume it was dead.

It can readily be seen from the foregoing that there was but very little, if any, conflict in the testimony on any material question of fact here involved.

The only reasonable inference that can be drawn from all of the testimony is that the cause of the wire being on the ground or, in suspension about 2 feet therefrom, was that sometime during the day in question, because of the windstorm, the branch from the birch tree described by the witnesses was

broken and blown on the defendant's lines. This might have happened several hours or just a few minutes before the plaintiff left the travelled portion of the highway to take hold of the wire he saw suspended about two feet above the ground.

At the close of plaintiff's testimony, defendant made a motion for a directed verdict for the reason that plaintiff had failed to show negligence on the part of the defendant that was the proximate cause of the injuries received by him. This motion was denied.

At the close of all of the proof the defendant renewed its motion for a directed verdict of no cause of action, which was also denied.

The case was then submitted to the jury under the following charge of the court on the question of defendant's liability:

"The plaintiff must also establish that the city has been guilty of some negligence on its part. Now, negligence ordinarily is want of reasonable care. Reasonable care in this case has to be judged somewhat by the nature of the object that the city was handling. You recognize, I recognize, the court recognizes that electric current is a dangerous commodity, and it was the duty under the law of the city to use the reasonable and ordinary care which persons generally use in the handling of electric currents, to see that it was properly protected against doing harm to others. Now, there is no question of improper construction here. As you see there isn't a word of testimony that this line wasn't properly constructed. It was not negligence for the defendant to build this line through the woods or through trees. We know as a matter of common knowledge that outside of the business district of all our towns that the electric lines and power lines run through the shade trees on our streets, and in every block they run through trees. There isn't any

other place to put them. So it is not negligence to construct a power line, an electric power line through trees. Nor would it necessarily be negligence to construct it alongside of a tree that looked as though it was dead. Nor would it be necessary for the city to cut every branch that might touch or drop upon the wire. The whole thing comes down to this, as far as the negligence of the defendant is concerned: That considering the fact that this line ran through trees, some of the limbs, of which were higher than the wires, considering that it carried a dangerous commodity, considering that there had been a rain and wind in the morning before this accident, did the company use the reasonable care and make the reasonable inspection that persons who ordinarily handle electric current would use under the same or similar circumstances. If they did, then this city is not liable, no matter how grievous the injury, whether or not the boy was negligent.

"Now, those are questions for you to answer. Say first, was this boy guilty of contributory negligence, considering his age and all that. If you say he was that ends the case. If you say he was not, then take up the question of whether or not the city was itself guilty of any negligence in the care and inspection that it made of the line. Did it do all that common prudence in handling electric current required. If it did, then the city is not liable.

"Now, that is about all I need to say to you. You have heard the testimony of the city inspector telling you of the frequency of its inspections, and it is for you to say whether or not that was sufficient in the use of reasonable care for the protection of the public. Now, if you say the city did use reasonable care or if you say that the plaintiff here was negligent under the rules that I have given you, then your verdict will be for the defendant."

The jury returned a verdict in favor of plaintiff in the sum of $500.

Plaintiff moved the court for a new trial on the ground that the verdict in favor of the plaintiff under the evidence was grossly inadequate. This motion was denied.

From the judgment entered upon the verdict defendant appeals and plaintiff cross-appeals.

Defendant insists that the court erred in submitting the case to the jury for the reason that under the evidence produced no negligence was established against defendant. Defendant also assigns error because the court did not charge that plaintiff was guilty of contributory negligence as a matter of law.

Plaintiff claims error because of the refusal of the court to grant a new trial, claiming the verdict rendered was grossly inadequate.

Inasmuch as our examination of the record and the briefs of the respective parties indicate that defendant's negligence was not established, that will be the only question that we will discuss in the determination of the merits of this appeal.

To approve of the charge of the court on the question of defendant's liability would practically be an adoption of the rule of *res ipsa loquitur,* which is not in vogue in this State. In effect this charge permitted the jury to say that because there had been an accident by reason of a power line being down, and some one was injured, that the owner of the agency responsible for the accident must respond in damages unless such owner made such inspection, and used such care as the jury thought should be made and used in handling electric current. In other words, it left the question of defendant's negligence too much in the realm of speculation and conjecture by the jury without admonishing them as to the applicable rules of law which were to govern them in their deliberations.

In the instant case there is no question of improper construction involved, and we must hold here that, in the absence of special circumstances, the inspection of defendant's lines once a month where they go through this wooded territory and sparsely settled community was the exercise of reasonable care on the part of defendant to ascertain if its system was in a condition to afford reasonable safety to the users of electric current and to the public. The special circumstance here which plaintiff contends subjects defendant to liability was the failure of it to patrol its lines on the day in question, during the rain and windstorm, to ascertain if any trees or branches of trees had fallen on its electric lines and rendered same dangerous to the public.

We quote from 9 R. C. L. pp. 1196, 1197, under the title "Electricity," the test which we find applicable to the situation in the case at bar:

"While, as will be seen, those engaged in generating and distributing electricity are held to a high degree of care for the protection of those liable to come in contact with this dangerous and subtle force, yet it is well established that the liability of electric light and power companies for damages for personal injuries either to the public or to their patrons, is governed, not by the principles of insurance of safety, nor of contracts, but, as in the case of personal injuries generally, by the simple rules of negligence, and no liability to respond in damages will attach in the absence of negligence on the part of the company or its employees proximately causing the injury complained of."

Also, from page 1198:

"The proximate cause of an injury has been defined as that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred, and in determining the lia-

bility of an electric company for a personal injury alleged to have been caused by its negligence, as in other actions for negligent injuries, the generally accepted test is that negligence is not the proximate cause of an accident unless, under all the circumstances, the accident might have been reasonably foreseen by a person of ordinary intelligence and prudence, and that it is not enough to prove that the accident is a natural consequence of the negligence, it must also have been the probable consequence. The law does not require impossibilities of such companies in avoiding accidents and resulting injuries, and, in the erection and maintenance of their poles, wires, and other appliances, they are bound to anticipate only such combinations of circumstances and accidents and injuries therefrom as they may reasonably forecast as likely to happen, taking into account their own past experience and the experience and practice of others in similar situations, together with what is inherently probable in the condition of their appliances as they relate to the conduct of their business. Thus for instance, if a storm that could not be anticipated, or reasonably foreseen, is the cause of a wire falling, and the company is not negligent in allowing it to remain there for an unreasonable time, then under those circumstances, it will not be liable for injuries resulting.''

In the instant case no one discovered that any part of defendant's line was down until after the accident. The line was not down for more than 8 or 10 hours at the most, and it is just as reasonable to assume that it had only been down a few minutes, and then only at a place which could have been discovered by defendant by patrolling its lines during the storm. There is nothing in the record to indicate that the storm was of such severity as to cause any alarm or even arouse a suspicion that an electric line might be torn from its moorings by the falling of a tree or a branch. As soon as defendant

learned of the condition of its line, it immediately proceeded to remedy the situation. True, if the defendant had ascertained during the day in question the fact that a branch had fallen on its wires knocking one of them from the poles, nothing less than immediate attention by making repairs would have absolved defendant from liability. It is entitled under the law to a reasonable time to correct any defect in its system after discovery of such defect, and could not be held liable otherwise, unless it was negligent in failing to discover such defect sooner. The question here is, was the defendant negligent in not discovering the defect in its lines sooner than it did? In the absence of any proof that the circumstances were such as the defendant might have had a reasonable forecast as to what was likely to happen, taking into account its own past experience and the experience and practice of others in similar situations, it was not negligent in its failure to make discovery, and we think it was clearly error on the part of the court, under the proof in this case, to submit the question of defendant's negligence to the jury.

The judgment is reversed and the case is remanded to the circuit court of Delta county with directions to enter a judgment of not guilty.

Defendant will recover costs.

Sharpe, C. J., and Bushnell, Boyles, North, Wiest, and Butzel, JJ., concurred. McAllister, J., took no part in this decision.