McMILLIAN v VLIET

Docket No. 70484. Argued June 4, 1985 (Calendar No. 1).—Decided
      September 24, 1985.

   Beatrice McMillian, as administratrix of the estate of Arthur E.
   McMillian, deceased, brought an action in the Ottawa Circuit
   Court against James Vliet, a Michigan State Police officer, for
   the wrongful death of Arthur McMillian which resulted from
   the discharge of Officer Vliet's cocked revolver during a strug-
   gle with McMillian. The court, Calvin L. Bosman, J., entered a
   judgment of no cause of action, finding that the holding of a
   cocked revolver while attempting to subdue an apparently
   unarmed suspect, although negligent, was not a proximate
   cause of the fatal shooting, but rather that McMillian's conduct
   in resisting the officer was the sole proximate cause. The Court
   of Appeals, R. B. BURNS, P.J., and MACKENZIE and ROOT, JJ.,
   affirmed in an unpublished opinion per curiam (Docket No.
   53110). The plaintiff appeals.

      In a unanimous opinion per curiam, the Supreme Court *held:*

      The trial court clearly erred in determining that, notwith-
   standing the negligence of the defendant, the decedent's con-
   duct was the sole proximate cause of his death. It is unclear
   what analysis the trial court used to arrive at its determina-
   tion, and its findings of fact do not permit the conclusion that
   the court recognized and properly applied the principle that
   there may be more than one proximate cause of an injury.

      1. The proximate cause of an injury is that which in a
   natural and continuous sequence, unbroken by a new, indepen-
   dent cause, produces the injury, without which the injury
   would not have occurred. An intervening cause is one which
   actively operates to produce harm to another after a negligent
   act or omission has been committed; it breaks the chain of
   causation and is a superseding cause which relieves the origi-
   nal actor of liability unless the intervening cause was reason-
   ably foreseeable. Once it is determined that a defendant was
   negligent, the defendant is held responsible for injurious conse-
   quences of the negligent act or omission which occurred natu-
   rally and directly, without reference to whether the defendant
   anticipated, or reasonably might have foreseen such conse-
   quences. Accordingly, proper analysis of proximate cause fre-

quently will turn on accurately determining whether the facts in a case present a situation involving direct causality or intervening causality. The fact that more than one cause operates to produce an injury is not in itself determinative. Two causes frequently operate concurrently so that both constitute a direct proximate cause of the resulting harm.

2. Because it is unclear what analysis the trial court used to conclude that the defendant's negligence was not a proximate cause and its findings of fact do not permit the conclusion that it recognized and properly applied the principle that there may be more than one proximate cause of an injury, and because the Court of Appeals affirmed on the basis of an intervening-cause analysis, reversal and remand for further proceedings is required.

Reversed and remanded.

*Libner, Van Leuven & Kortering, P.C.* (by *Vernon D. Kortering*), for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas L. Casey* and *Mark E. Blumer,* Assistant Attorneys General, for the defendant.

PER CURIAM. This is a wrongful death action initiated to recover damages for the death of Arthur McMillian, which resulted from the accidental discharge of State Police Trooper James Vliet's revolver while Vliet was in the process of arresting McMillian following a high-speed automobile chase. We are asked in this case to review the factual finding of the trial judge, after a two-day bench trial, that, notwithstanding the negligence of the defendant, the decedent's own conduct was the sole proximate cause of his death. Our review leaves us convinced that the trial court's finding is clearly erroneous.[1]

---

[1] Review in this case is conducted pursuant to the standard set forth in MCR 2.613(C) which provides: "Findings of fact by the trial court may not be set aside unless clearly erroneous. In the application of this principle, regard shall be given to the special opportunity of

I

On July 16, 1976, at approximately 10:15 A.M., while alone on routine patrol in a marked Michigan State Police patrol car, officer James Vliet observed a vehicle being driven by the deceased, Arthur McMillian, and occupied in the front passenger seat by Michael Scott. When first observed, the car was traveling southbound on U.S. 131 in Grand Haven at what appeared to be an excessive rate of speed; however, when Vliet began following it, the driver slowed to a speed five to ten miles per hour below the posted speed limit. After following for a short distance, Vliet decided to stop the car to talk to the driver. He switched on his overhead flashing lights and signaled the driver to pull over. The automobile pulled into a parking lot and stopped, and officer Vliet followed and got out of his patrol car. However, when he reached the driver's door, McMillian suddenly sped away. Vliet got back into his car, and a chase ensued at speeds in excess of eighty miles per hour. On at least two occasions during the chase, when Trooper Vliet attempted to pull up next to the other vehicle, McMillian swerved at the patrol car, colliding with it on at least one occasion and forcing the patrol car into the lane of oncoming traffic on another.

McMillian lost control of his car while attempting to negotiate a turn, and the car jumped a curb and struck and came to rest against a utility pole guidewire. As Vliet stopped approximately eight feet behind the stalled Ford, both the driver and passenger doors of the other vehicle were opened.

the trial court to judge the credibility of the witnesses who appeared before it." "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Tuttle v Dep't of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976).

Vliet got out of his car and drew and cocked his service revolver. The passenger, Michael Scott, got out and took a few steps, but complied with the officer's commands and stopped and placed his hands on the top of the car.

The driver, McMillian, had looked out of the open driver's door toward Vliet, but then disappeared from sight before he emerged from the passenger door. McMillian disregarded the officer's commands and took several strides in a manner which led Vliet to believe he was intent on running. Vliet then stepped forward, placed his left hand on McMillian's left shoulder, forced McMillian to the car and, when McMillian continued to resist, used the heel of his right hand at McMillian's upper back to push him down over the trunk. The cocked revolver was still in Vliet's right hand, but, according to the officer and a witness, its barrel was pointed up in the air. However, as McMillian was bent over, he suddenly swung his left elbow around and backward striking Vliet, and, turning his head to the left to face the officer, he stood up. This movement by McMillian placed the left side of his head in contact with the muzzle of Vliet's gun and the impact jarred Vliet and caused the gun to discharge. The bullet struck McMillian in the head rendering him immediately unconscious. He died several days later.

Plaintiff, Beatrice McMillian, administratrix of the estate and mother of the deceased, brought this action against Trooper Vliet, alleging that he had acted negligently in the use of his handgun and that his negligence was the proximate cause of the decedent's injury. Trooper Vliet denied negligence on his part and alleged that McMillian's death was proximately caused by his own negligence and reckless, wanton, and wilful conduct.

After a full trial in the Ottawa Circuit Court,

Judge Calvin L. Bosman, sitting without a jury, issued an opinion. In resolving the negligence questions presented, Judge Bosman found that Officer Vliet's initial conduct of drawing and cocking the revolver was reasonable in light of the circumstances, which indicated that McMillian was desperate and possibly armed. However, his failure to uncock his gun after it became obvious that McMillian did not have a weapon in his hands was found to be negligent.

> After McMillian exited his vehicle, his hands were in view of Vliet and it became obvious that he did not have a weapon in his hands. There no longer continued the urgency for having a cocked gun. A cocked gun under those circumstances is considerably more dangerous than one which is drawn and remains uncocked. There is a much greater danger of accidental discharge with a cocked gun and especially if the use of physical force to subdue an unarmed person is necessary. This Court believes that holding a cocked revolver is something a reasonably prudent police officer would not do because of the risk involved. This risk involves the accidental discharge when the gun is intentionally or unintentionally pointed at some person.

Judge Bosman absolved the defendant of liability by finding that McMillian's own "wilful, wanton and reckless conduct" in making a "sudden, violent and hostile act," by turning and lifting his own body into the line of fire while simultaneously striking Officer Vliet with his elbow, was the proximate cause of his own injuries.

> Vliet, however, was careful in spite of the quickness and forcefulness of his action to keep the gun pointed up so that at no time was it pointed by Vliet at McMillian or anyone else. It was not until

McMillian in a sudden, violent, and hostile act brought his body up, turning it around while swinging his left elbow in Vliet and placing his head in a position so that the lower left side of his head was against the muzzle of the gun that the gun was pointed at him. The direction of the gun was not moved by Vliet. It was McMillian's action that placed his head against the gun. McMillian had seen that Vliet was a police officer. He saw that Vliet carried his revolver in his right hand. When Vliet put his left hand on McMillian's left shoulder and directed him around and forced him down by pressure in the middle of his back, Mc-Millian must have known this was done by Vliet with his gun hand and yet with all of this knowl-edge, he chose with wilful and reckless disregard of these facts and the dangers inherent therein, to violently act in the manner which he did with total disregard for his own safety or to the safety of others. His wilful, wanton and reckless conduct was the proximate cause of his own injuries. . . . Although having found Vliet negligent, the wilful, wanton and reckless conduct of the deceased was the proximate cause of the injury and thereby bars recovery in this matter.

Judge Bosman entered a judgment of no cause of action, and the case was dismissed. Plaintiff ap-pealed to the Court of Appeals which reviewed the record and, in an unpublished per curiam opinion filed October 29, 1982, concluded that the trial court's finding of fact was not clearly erroneous. The judgment was affirmed. This Court granted leave to appeal on May 17, 1984. 419 Mich 870 (1984).

On appeal, plaintiff contends that the trial court erred in determining that, notwithstanding the negligence of the defendant, the decedent's own conduct was the sole proximate cause of his death. We agree.

## II

In *Weissert v City of Escanaba,* 298 Mich 443, 452; 299 NW 139 (1941), this Court defined "proximate cause" as "that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred . . . ." While the foregoing definition constitutes a test for determining whether proximate cause exists by virtue of direct causality, it also makes reference to the concept of intervening causality. An "intervening cause" is defined in 2 Restatement Torts, § 441, p 465 as "one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." An intervening cause breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was "reasonably foreseeable." See, *e.g., Moning v Alfono,* 400 Mich 425, 442; 254 NW2d 759 (1977).

This Court has recognized a distinction between direct and intervening causal situations and set forth different tests for determining proximate cause in each:

> "It appears that the modern trend of judicial opinion is in favor of eliminating foreseeable consequences as a test of proximate cause, except where an independent, responsible, intervening cause is involved. The view is that once it is determined that a defendant was negligent, he is to be held responsible for injurious consequences of his negligent act or omission which occur naturally and directly, without reference to whether he anticipated, or reasonably might have foreseen such consequences.

> \* \* \*

"There is no need for discussing proximate cause in a case where the negligence of the defendant is not established, but when his negligence has been established, the proximate result and amount of recovery depend upon the evidence of direct sequences, and not upon defendant's foresight." [*Davis v Thornton,* 384 Mich 138; 180 NW2d 11 (1970) (quoting 38 Am Jur, Negligence, § 58, pp 709-710).]

Accordingly, proper analysis of a proximate cause question frequently will turn on accurately determining whether the facts in a case present a situation involving direct causality or intervening causality. The fact that more than one cause operates to produce an injury is not in itself determinative. Two causes frequently operate concurrently so that both constitute a direct proximate cause of the resulting harm. See *Brackins v Olympia, Inc,* 316 Mich 275; 25 NW 197 (1946), and the cases cited therein. An intervening cause situation is distinguishable from concurrently operating causes in that it involves an intervening cause or act which begins operating "after the actor's negligent act or omission has been committed." 2 Restatement Torts, § 441, p 465. See also *City of Aurora v Loveless,* 639 P2d 1061 (Colo, 1981).

III

It is unclear what analysis was used by the trial court to arrive at the finding that Officer Vliet's negligence was not a proximate cause of the harm that resulted in this case. The Court of Appeals affirmed on the basis of an intervening-cause analysis, opining that the deceased's act of "whirling around" was "highly extraordinary" and therefore presented a question of "foreseeability" properly left to the factfinder. We do not agree. We are not convinced by the trial court's findings of fact that

that court recognized and properly applied the principle that there may be more than one proximate cause of an injury. See, *e.g., Kirby v Larson,* 400 Mich 585, 605; 256 NW2d 400 (1977).

We reverse the judgments of the Court of Appeals and the trial court and remand to the trial court for proceedings consistent with this opinion.

WILLIAMS, C.J., and LEVIN, RYAN, BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred.