# STATE OF MICHIGAN

# COURT OF APPEALS

---

ESTATE OF BETTY SIMMS-NORMAN, by its
Personal Representative, MARCIA BUTTS,

        Plaintiff-Appellee,

v

ST. JOHN MACOMB-OAKLAND HOSPITAL,
ST. JOHN PROVIDENCE HEALTH SYSTEM,
SETH B. PARKER, M.D., and GREAT LAKES
MEDICINE, PLC,

        Defendant-Appellants.

UNPUBLISHED
June 19, 2018

No. 334892
Macomb Circuit Court
LC No. 2015-00135-NH

---

Before: JANSEN, P.J., and SERVITTO and SHAPIRO, JJ.

JANSEN, P.J. (*dissenting*)

Because I believe defendants were entitled to summary disposition, I dissent.

In a medical malpractice case, it is plaintiff's burden to prove that defendant's breach of the standard of care was the proximate cause of his or her injuries. *Lockridge v Oakwood Hosp*, 285 Mich App 678, 684 (2009), citing *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). "Proximate cause is a term of art that encompasses both cause in fact and legal cause." *Craig*, 471 Mich at 86. Plaintiff must prove that " 'but for' the defendant's actions, the plaintiff's injury would not have occurred. On the other hand, legal cause or 'proximate cause' normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Skinner v Square D Co.,* 445 Mich 153, 163; 516 NW2d 475 (1994) (citations omitted). A plaintiff need not prove that the defendant's actions were the *sole* cause of his or her injuries, however plaintiff must "introduce evidence permitting the jury to conclude that the act or omission was *a* cause." *Craig*, 471 Mich at 87.

Michigan law is clear that causation cannot be established by "mere speculation." *Genna v Jackson*, 286 Mich App 413, 417-418; 781 NW2d 124 (2009). "A mere possibility of . . . causation is not sufficient; and when the matter remains one of pure speculation and conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict in favor of the defendant." *Id*. Additionally, an act that occurs after the actor's negligent act was committed, " 'which actively operates in producing harm to another[,]' " may break the causal chain. *McMillian v Vliet*, 422 Mich 570, 576; 374 NW2d 679 (1985) (citations omitted).

-1-

Such an act will constitute a superseding cause that relieves the original actor from liability. *Id.* Generally, proximate cause is a question for the jury; however, "if reasonable minds could not differ regarding the proximate cause of plaintiff's injury, the court should decide the issue as a matter of law." *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002).

As an initial matter, it appears as though my colleagues ignore the testimony of plaintiff's treating nephrologist Dr. Navkiranjot Brar, who is also a board certified nephrologist. Dr. Brar was clear in her opinion that plaintiff's eventual dialysis treatment was the result of acute tubular necrosis (ATN), and not acute interstitial nephritis (AIN) caused by plaintiff's use of a proton pump inhibitor (PPI) medication. Specifically, Dr. Brar testified that if the PPI medications administered to plaintiff were causing her acute kidney failure, when plaintiff was taken off of the PPI drugs, her kidney function would have improved, and she would not have "ended up with renal failure." However, that did not happen in this case. During plaintiff's second hospitalization, plaintiff showed no signs of AIN. She did not have a fever, she did not exhibit a rash, and there was no presence of eosinophil in her urine. Dr. Brar testified:

> Yes, she has renal failure. You're trying to find out why she's in renal failure. Could it be [the PPI medication]? I stopped [the PPI medication]. I expect the kidney numbers to be better. Didn't happen. Okay. I give IV fluids. The patient was dehydrated, but it's still not happening. So what's going on? So then we check the urine sediment, and this time she had just tons of granular cast sitting there which tells, okay, yes, this is ATN.

Dr. Brar further explained that when PPI drugs cause

> damage to the kidney, it's a different form, and I wasn't see[ing] any of those results on the lab tests. When the other things your heart failure, prerenal causing and leading to ATN, there is a different component of the kidney being affected. And all the data was suggestive it is more ATN. ***We didn't have any data to support that it's AIN.*** [Emphasis added.]

Plaintiff has failed to present evidence suggesting that PPI medications can, or did in this case, cause ATN. Accordingly, in my view, plaintiff has failed to establish cause-in-fact, and on that basis alone defendants were entitled to summary disposition in their favor.

Further, I disagree with my colleagues that plaintiff has established legal causation. The record here is clear that before plaintiff was admitted to the emergency room, Dr. Yalala, plaintiff's nursing home physician, had been treating plaintiff with Prilosec, a PPI medication, and when plaintiff returned to the nursing home, Dr. Yalala continued to administer Prilosec.[1] Accordingly, Protonix, the PPI medication listed, but not proscribed, by Dr. Seth Parker in the discharge instructions was never administered to plaintiff. This is significant because despite being members of the same class of drugs, Prilosec and Protonix are not the same medication. Prilosec and Protonix have different chemical compositions, and one is not the generic for the

---

[1] Dr. Yalala's first name does not appear in the record.

other.  Indeed, plaintiff's expert witness, Dr. David Winston, testified that most of the medical literature that attributes PPI medication to AIN focuses on a patient's use of Prilosec, not Protonix.  Dr. Winston specifically testified that "[b]ecause of the prevalence of omeprazole or Prilosec use being far greater than Protonix, the greater number of cases have been omeprazole; however the authors would speculate that its due to the ratio of overall prescribing and use."  However, such speculation is insufficient to establish causation.  *Genna*, 286 Mich App at 417-418.  Additionally, there is no testimony that Dr. Yalala, or any other medical professional at the nursing home, ever relied on the discharge instructions written by Dr. Parker.  Although Dr. Winston testified that it was "usual and customary" for a nursing home doctor to rely on the discharge instructions, it is speculative to assume that Dr. Yalala did so here.  Again, plaintiff cannot prove proximate causation based on speculation or conjecture.  *Id.*

Assuming *arguendo* that plaintiff had established proximate causation, my colleagues also ignore the fact that Dr. Yalala used her independent medical judgment and continued to treat plaintiff with a PPI medication upon plaintiff's return to the nursing home, despite the discharge instructions being clear that plaintiff was suffering from kidney failure.  Specifically, the discharge instructions state in large, bold, and capital letters that plaintiff was suffering from renal failure.  Dr. Yalala's judgment is particularly questionable in light of Dr. Winston's expert opinion that the medical community widely accepted that PPI drugs can be linked to AIN, and possible subsequent kidney failure.  I would conclude that Dr. Yalala's equally negligent medical treatment was a superseding cause of plaintiff's injuries, which breaks the causal chain and relieves Dr. Parker of all liability.  Regardless, in my view, plaintiff has presented only speculative evidence regarding legal causation.  Reasonable minds could not differ that Dr. Parker was not the proximate cause of plaintiff's injuries, and for that reason, defendants were entitled to summary disposition as a matter of law.


/s/ Kathleen Jansen