*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KELLY DOUGHERTY, Individually
and as Personal Representative of the
ESTATE OF KEVIN MCGRIFF, JR.,

        Plaintiff-Appellee,

v

CITY OF DETROIT and DETROIT FIRE
DEPARTMENT,

        Defendants,

and

SERGEANT ROGER HARPER,

        Defendant-Appellant.

UNPUBLISHED
December 21, 2021
APPROVED FOR
PUBLICATION
February 3, 2022
9:00 a.m.

No. 354624
Wayne Circuit Court
LC No. 18-012675-NO

Before: K. F. KELLY, P.J., and JANSEN and RICK, JJ.

RICK, J.

This case arises out of a fire and subsequent tragic death of plaintiff's son, Kevin McGriff, Jr. Plaintiff alleged that defendant Sergeant Roger Harper, a Detroit Fire Department (DFD) firefighter,[1] negligently caused the death of McGriff and negligently inflicted emotional distress

---

[1] Sergeant Harper is an employee of the DFD in the city of Detroit (the City). While DFD and the City were defendants below, the trial court granted summary disposition in their favor and plaintiff did not appeal those decisions. Therefore, only Sergeant Harper is a party to this appeal.

on her by failing to locate him after a house fire.[2]  Defendant contended he was entitled to summary disposition under MCR 2.116(C)(7) because he was entitled to governmental immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq*.  The trial court denied summary disposition to defendant, finding he was not entitled to governmental immunity under the GTLA because evidence suggested that his conduct amounted to gross negligence and was the proximate cause of McGriff's death.  Defendant now appeals as of right.  We reverse the order denying summary disposition to defendant and remand for entry of an order granting summary disposition to defendant under MCR 2.116(C)(7).

## I. BACKGROUND

This case arises out of a fire that occurred on March 5, 2018, at McGriff's house, where McGriff's deceased body was found in the kitchen five days later.  At approximately 5:00 a.m. on the day of the fire, McGriff's father left the house while McGriff was sleeping in bed.  At approximately 8:25 a.m., DFD dispatched firefighters to extinguish a fire at the house.  Defendant was one of the first firefighters to arrive at the house, arriving approximately five minutes after the dispatch call.  Defendant ordered firefighters to begin extinguishing the fire and search the house.  After firefighters reported to defendant that there were no bodies or fire in the basement, defendant entered the house and began searching it himself.  Once he concluded his search of the second floor and found no bodies there, defendant and another firefighter began inspecting the dining room and kitchen on the first floor.  Although defendant could not confirm whether anyone else searched the kitchen before him, multiple firefighters reported that they were in the kitchen extinguishing a fire before defendant entered.  Defendant asserted that the kitchen was well lit and clear of smoke when defendant searched it.  Defendant reported that he was able to clearly see the areas in front of the lower kitchen cupboards and saw no bodies in the room.  Other firefighters also searched the kitchen after defendant and also did not find McGriff's body.  After defendant completed his search of the house and was satisfied that all other searches were completed, he informed DFD dispatch that the house was cleared of any individuals.

Later that day, DFD informed McGriff's father that firefighters did not locate anyone inside the house.  McGriff's father then searched the city for his missing son for five days until McGriff's body was discovered in the kitchen huddled by the stove.  The medical examiner determined that McGriff died as a result of smoke and soot inhalation and thermal burns.  Although defendant maintained he did not see the body in the kitchen during his search and did not know how the body ended up there, DFD disciplined defendant for failing to supervise a proper search of the house.

Following several amendments of the complaint and summary disposition proceedings involving the city of Detroit (the City) and DFD, plaintiff filed a complaint against the City and defendant, alleging that defendant negligently caused McGriff's death and caused severe emotional distress to plaintiff.  The City and defendant moved for summary disposition, arguing

---

[2] On appeal, defendant disputes that plaintiff raised a claim of "negligent or intentional infliction of emotional distress" in the complaint.  However, the third amended complaint asserts, in relevant part, that plaintiff suffered emotional distress as a result of defendant's conduct.

they were immune from liability on the basis of governmental immunity because defendant owed no duty to McGriff or plaintiff and defendant's conduct was neither grossly negligent nor the proximate cause of McGriff's death. Plaintiff opposed summary disposition, arguing that defendant was not entitled to governmental immunity because his conduct was grossly negligent and a jury could find that he was the proximate cause of McGriff's death.[3] After a hearing on the matter, the trial court concluded that defendant's failure to locate McGriff's body was circumstantial evidence demonstrating that his conduct was reckless enough to constitute gross negligence and was a proximate cause of McGriff's death. Consequently, the trial court found defendant was not entitled to governmental immunity and denied summary disposition to defendant.

## II. DISCUSSION

Defendant argues the trial court erred by denying him summary disposition because he was entitled to governmental immunity under the GTLA. Specifically, defendant argues that plaintiff failed to establish that defendant owed any legal duty, that there existed a question of fact as to whether defendant's conduct was grossly negligent, and that defendant's conduct was the proximate cause of McGriff's death. We agree.

## A. STANDARD OF REVIEW AND BACKGROUND LAW

This Court reviews de novo the applicability of governmental immunity and a trial court's decision regarding a motion for summary disposition. *Ray v Swager*, 501 Mich 52, 61-62; 903 NW2d 366 (2017). "[W]hether a party owes an actionable legal duty is a question of law" that this Court also reviews de novo. *Downs v Saperstein Assoc Corp*, 265 Mich App 696, 699; 697 NW2d 190 (2005). When deciding whether a claim is barred under MCR 2.116(C)(7) on the basis of immunity granted by law, "a trial court should examine all documentary evidence submitted by the parties, accept all well-pleaded allegations as true, and construe all evidence and pleadings in the light most favorable to the nonmoving party." *Clay v Doe*, 311 Mich App 359, 362; 876 NW2d 248 (2015) (cleaned up). "Although questions regarding whether a governmental employee's conduct constituted gross negligence are generally questions of fact for the jury, if reasonable minds could not differ, summary disposition may be granted." *Wood v Detroit*, 323 Mich App 416, 424; 917 NW2d 709 (2018).

Under the GTLA, governmental employees are "generally immune from tort liability when they are engaged in the exercise or discharge of a governmental function." *Ray*, 501 Mich at 62. One exception under the GTLA is in MCL 691.1407(2), which provides, in pertinent part:

> [E]ach . . . employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the . . . employee . . . while in the course of employment . . . if all of the following are met:

---

[3] Before the trial court had resolved the City's and defendant's motion for summary disposition, plaintiff filed an amended complaint that removed the City as a party.

(a) The . . . employee . . . is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The . . . employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Neither party disputes that subdivisions (a) and (b) under MCL 691.1407(2) are met in this case. Therefore, the applicability of governmental immunity to defendant depends on whether his conduct was grossly negligent and the proximate cause of McGriff's death. See MCL 691.1407(2)(c). The GTLA defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). The GTLA thus protects governmental employees that are not grossly negligent from "all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages." *In re Bradley Estate*, 494 Mich 367, 385; 835 NW2d 545 (2013). The governmental employee bears the burden of raising and proving his or her entitlement to immunity as an affirmative defense. *Ray*, 501 Mich at 62. Under the GTLA, which both parties agree controls here, a governmental employee is entitled to governmental immunity against a claim of negligence involving a wrongful death when the employee owed no duty to the plaintiff, *Downs*, 265 Mich App at 699, his or her conduct was not grossly negligent, *Wood*, 323 Mich App at 424, or his or her conduct was not the proximate cause of the plaintiff's injuries, *Ray*, 501 Mich at 64-65.

## B. DEFENDANT OWED NO LEGAL DUTY

Under the GTLA, a governmental employee is entitled to governmental immunity, and, thus, summary disposition, if the plaintiff fails to establish that the employee owed a duty in tort. *Downs*, 265 Mich App at 699. Generally, "[a] duty may be created expressly by statute, or it may arise under the common law." *Id*. Firefighters are not held to the public-duty doctrine imposed upon police officers. *Beaudrie v Henderson*, 465 Mich 124, 134; 631 NW2d 308 (2001).[4] Additionally, the GTLA does not create any duty. See *id*. at 139 n 12. Therefore, a plaintiff must establish that the governmental employee owed him or her a common-law duty "without regard to the defendant's status as a government employee." *Id*. at 134.

Whether a common law duty exists is dependent on "the relationship of the parties, the foreseeability of the harm, the burden on the defendant, and the nature of the risk presented." *Murdock v Higgins*, 454 Mich 46, 53; 559 NW2d 639 (1997). There is no general duty obligating one person to aid or protect another unless there exists some sufficiently strong "special

---

[4] Under the public-duty doctrine, a police officer owes a duty to protect the public as a whole—not any one particular individual. *Beaudrie*, 465 Mich at 131. Accordingly, police officers cannot be held liable for personal injuries unless they breach some other duty owed to a specific individual. See *id*. at 131, 141. Our Supreme Court expressly limited the public-duty doctrine to governmental employees who allegedly failed to provide police protection. *Id*. at 134.

relationship" between the parties that requires a defendant to protect an injured party. *Id*. at 54. A special relationship exists only where one party "entrust[ed] himself [or herself] to the protection and control of another and, in doing so, that party loses the ability to protect himself [or herself]." *Downs*, 265 Mich App at 701.

Plaintiff did not allege that defendant owed any statutory duty and the relevant portion of the GTLA does not create a duty. Therefore, defendant only owed a duty to plaintiff if one existed under the common law. See *Murdock v Higgins*, 454 Mich at 53. First, it is undisputed that defendant did not know McGriff or plaintiff at the time of the incident. See *id*. (stating that the relationship of the parties is a relevant factor in determining the existence of a common-law duty). Moreover, there is no evidence to suggest that defendant knew McGriff was in the house at the time of the fire or that there existed some special relationship between the parties. Indeed, the facts reveal that defendant and his fellow firefighters searched the house during the fire and after it was extinguished, looking for any occupants. This Court has held that no "special relationship" exists where no evidence suggests that individuals injured in a fire "completely turned themselves over to" a firefighter for their fire protection or that the injured individuals were "completely incapable of protecting themselves" from the fire. *Downs*, 265 Mich App at 701. In the instant case, there is no evidence or suggestion that plaintiff turned herself over to protection by defendant. Similarly, no evidence suggests that McGriff turned himself over to protection by defendant. Moreover, no evidence suggests that McGriff, a 26-year-old, was "completely incapable" of protecting himself from the fire. Consequently, there existed no special relationship between the parties that imposed a duty on defendant to protect McGriff or plaintiff.

Second, while defendant certainly would be able to foresee that someone in a house could be harmed or killed by a fire, there is no evidence indicating that defendant knew that anyone was in the house at the time of the fire. See *Murdock*, 454 Mich at 53 (stating the foreseeability of the harm is a relevant factor in determining the existence of a common-law duty). This fact, coupled with the fact that defendant and other firefighters searched the house and found no one inside, makes it less foreseeable that someone could have been injured or killed by the specific fire at the house. Additionally, defendant likely could not have foreseen that his conduct—searching the entire house and ordering others to search the entire house—would result in McGriff's death, or, following the search, that his failure to locate McGriff's body would cause plaintiff's emotional injuries.

Third, we think it is too heavy a burden to impose an affirmative duty on firefighters to ensure the survival of individuals that are unobservable at the scene of a fire. See *id*. (stating the burden on the defendant is a relevant factor in determining the existence of a common-law duty). As defendant pointed out, imposing such a broad duty that places personal liability on firefighters not only contradicts established law, but could also have a chilling effect on recruitment of firefighters. Similarly, this enhanced burden would alter how long a firefighter must remain in a fire-compromised building, thereby jeopardizing his or her own safety and the safety of his or her crew. See *id*. (stating the nature of the risk presented is a relevant factor in determining the existence of a common-law duty). We see no reason to impose an affirmative duty on firefighters requiring them to ensure the survival of individuals, who firefighters are unaware that exist, and cannot be located despite numerous searches of an area.

Because defendant had no special relationship with plaintiff or McGriff, defendant owed no duty to them and was, therefore, entitled to governmental immunity.

## C. DEFENDANT WAS NOT GROSSLY NEGLIGENT

Even if defendant owed a legal duty to plaintiff or McGriff, he still would have been entitled to governmental immunity because the evidence did not establish a question of fact as to whether his conduct was grossly negligent.

As noted earlier, the GTLA defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). Gross negligence "suggests almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Wood*, 323 Mich App at 424 (cleaned up). "Evidence of ordinary negligence" or "simply alleging that an actor could have done more" is insufficient to meet the standard for gross negligence under the GTLA. *Id*. at 423-424 (cleaned up).

Viewing all evidence and pleadings in the light most favorable to plaintiff, the evidence established: (1) defendant conducted numerous searches of the inside and outside of the house during and after the fire; (2) even if defendant did not order other firefighters to search the kitchen, he searched the kitchen at least once and found no bodies; (3) both before and after defendant searched the kitchen, other firefighters searched the kitchen and found no body; (4) McGriff's body was found in the kitchen five days after the fire; (5) McGriff died as a result of fire-related injuries, specifically smoke and soot inhalation and thermal burns, suggesting he was in the house at the time of the fire; and (6) as a result of believing McGriff did not die in the fire, plaintiff asserted that she suffered emotional injuries after McGriff's deceased body was later found in the house. Plaintiff alleges it is more likely that defendant undertook no search of the kitchen than it is he failed to locate the body during his search. The trial court also concluded that defendant's failure to locate the body, despite searching the kitchen, constituted circumstantial evidence that defendant was reckless. As defendant asserted, however, any suggestion that defendant did not conduct a thorough enough search was speculation that contradicted the direct evidence demonstrating he and numerous firefighters searched the entire house.

The circumstances surrounding McGriff's death are peculiar, especially considering that his 6-foot-2-inch body was subsequently found in a "cubby" between the cabinets and the stove in the kitchen. Nonetheless, given the reports indicating that multiple firefighters searched the kitchen without finding McGriff's body, we conclude that plaintiff failed to establish a genuine issue of material fact as to whether defendant's conduct amounted to gross negligence. The fact that other firefighters did not find McGriff's body despite multiple searches indicates that McGriff's body was not readily observable while the firefighters were at the house, regardless of how readily observable it was five days later. Plaintiff alleged that defendant was grossly negligent because he did not search the kitchen twice or failed to conduct a search entirely. As indicated, the evidence suggests that several searches of the kitchen were completed. Moreover, although a more thorough search may have uncovered McGriff's body, plaintiff's contention is no more than a simple allegation that defendant could have done more. However, failing to conduct a more thorough search is insufficient to defeat governmental immunity. See *Wood*, 323 Mich App at 424. Further, while defendant's failure to find McGriff's body may circumstantially suggest that he

could have conducted a more thorough search, no evidence suggests that a more thorough search would have prevented McGriff's unfortunate death.

The severity of defendant's conduct is similar to that of the defendant in *Wood*. In *Wood* a bus driver failed to ensure that the lug nuts on the tires of a van he drove were properly secured. When the bus driver drove the van, a tire came off and struck and injured a pedestrian. *Wood*, 323 Mich App at 418, 424. Although it was the bus driver's responsibility to inspect the tires and lug nuts of any *bus* he drove, he testified that it was the responsibility of maintenance workers to ensure proper working conditions of *vans* such as the one he drove at the time of the incident. *Id*. at 424-425. Further, no evidence suggested the bus driver had knowledge that one of the van's tires was missing lug nuts before he drove it. *Id*. at 425. This Court concluded that, even though it was not the bus driver's responsibility to inspect the van's tires before driving, his failure to do so could still amount to negligence, but not gross negligence. *Id*.

Similarly, in the instant case, no evidence suggests that defendant knew anyone was in the house at the time of the fire. Therefore, defendant was not on notice to conduct a more thorough search. Further, even if he was responsible for conducting additional searches of the kitchen, defendant searched the kitchen at least once with another firefighter for five minutes and other firefighters searched the kitchen before and after defendant. Just as in *Wood*, the evidence suggests that defendant's conduct—searching the house but failing to locate McGriff's body—could constitute ordinary negligence, but not gross negligence. Defendant's thorough search of the house and his orders to others to search various parts of the house do not constitute a reckless and substantial lack of concern for possible injury or a willful disregard for safety. MCL 691.1407(8)(a); *Wood*, 323 Mich App at 424.

Based on the evidence presented, reasonable minds might differ as to whether defendant was ordinarily negligent in the way he searched the house, but reasonable minds could not differ as to whether his conduct was grossly negligent. Nothing in the evidence suggests that defendant acted recklessly or willfully disregarded the safety of anyone he knew or suspected was in the house. Therefore, defendant was entitled to governmental immunity.

### D. DEFENDANT DID NOT PROXIMATELY CAUSE MCGRIFF'S DEATH

Even if defendant owed a legal duty to plaintiff or McGriff and his conduct was grossly negligent, he still would have been entitled to governmental immunity because he did not proximately cause McGriff's death.

A governmental employee's grossly negligent conduct does not except him or her from governmental immunity unless it was the factual and proximate cause, or "legal causation," of the plaintiff's injuries. *Ray*, 501 Mich at 65. "[S]o long as the defendant is a factual cause of the plaintiff's injuries, then the court should address legal causation by assessing foreseeability and whether the defendant's conduct was the proximate cause." *Id*. at 74. To establish factual cause, the plaintiff must establish that "the defendant's conduct in fact caused harm to the plaintiff" or was a "but-for cause." *Id*. at 64, 66 (cleaned up). To establish proximate cause, the plaintiff must establish that "it was foreseeable that the defendant's conduct could result in harm" to the plaintiff. *Id*. at 65. In other words, "the harm caused to the plaintiff was the general kind of harm the defendant negligently risked." *Id*. at 64 (cleaned up). Although there generally may be more than

one proximate cause to an injury, a governmental employee's conduct cannot be the proximate cause under the GTLA unless it was "the one most immediate, efficient, and direct cause of the [plaintiff's] injuries." *Id*. at 76 (cleaned up).

In *Ray*, 501 Mich at 70-76, our Supreme Court clarified the analysis of factual cause and proximate cause under the GTLA and discussed *Beals v Michigan*, 497 Mich 363; 871 NW2d 5 (2015), overruled in part by *Ray*, 501 Mich at 72 n 49, and *Dean v Childs*, 474 Mich 914, 914; 705 NW2d 344 (2005) (*Dean II*), rev'g 262 Mich App 48; 684 NW2d 894 (2004) (*Dean I*), overruled by *Ray*, 501 Mich at 72-73 n 49.[5]

In *Beals*, our Supreme Court held that a lifeguard's failure to intervene in a swimmer's drowning was insufficient to establish that the lifeguard's inaction was the proximate cause of the swimmer's death under the GTLA . *Beals*, 497 Mich at 366, 373-374. *Beals* involved a 19-year-old swimmer with a developmental disability who waded to the shallow end of a pool in a state residential facility, swam underwater to the deep end, and never resurfaced. *Id*. at 366-367. There was no evidence indicating that the swimmer visibly struggled in the water or that the lifeguard or any of the 24 other students witnessed the swimmer in distress. *Id*. at 367. The swimmer was not discovered until he had been underwater for approximately eight minutes, at which point the lifeguard attempted cardiopulmonary resuscitation (CPR) to no avail. *Id*. The cause of the swimmers death was "drowning" and the underlying reason for the accidental downing was unknown. *Id*. Evidence suggested that the lifeguard was distracted at the time the swimmer drowned and that he did not sit in the lifeguard observation stand or notice the swimmer had slipped underwater until the body was discovered. *Id*. at 368.

Our Supreme Court concluded that the lifeguard's failure to intervene was not the "most immediate, efficient, and direct cause" of the swimmer's drowning because the lifeguard did not cause the swimmer to swim underwater or remain submerged. *Id*. at 373. The Court noted that the swimmer voluntarily entered the pool and dove under the surface of the water and that it was "unknown" what caused the swimmer to remain underwater. *Id*. The Court concluded that this "unidentified reason" as to why the swimmer remained underwater was the "most immediate, efficient, and direct cause" of the drowning. *Id*. at 373-374. The Court also noted that the lifeguard's failure to intervene in the drowning could have been one of numerous reasons the swimmer drowned, but it was not the proximate cause of his death. *Id*. at 374. The Court also explained that any evidence indicating that proper intervention could have prevented the swimmer's death was speculation that did not establish a proximate relationship between the lifeguard's conduct and the swimmer's death. *Id*.

The *Beals* Court also analogized the case to *Dean*, which involved a claim that a governmental employee's failure to intervene to prevent the death of the plaintiff's children during a house fire was the proximate cause of the children's deaths. *Beals*, 497 Mich at 375-377; *Dean*

---

[5] *Dean II,* 474 Mich at 914, was a preemptory order by our Supreme Court that reversed this Court's ruling in *Dean I, 2*62 Mich App at 48. Subsequently in *Ray*, 501 Mich at 72-73 n 49, our Supreme Court overruled *Dean II* and concluded that the reasoning adopted by the preemptory order was erroneous.

*I*, 262 Mich App at 51-52. In *Dean II*, 474 Mich at 914, our Supreme Court reversed this Court's opinion in *Dean I* affirming the denial of summary disposition on the basis of governmental immunity, and adopted the reasoning of Judge GRIFFIN's dissent, which concluded that the defendant was immune from tort liability under the GTLA because "the most immediate, efficient and direct cause" of the children's deaths "was the fire itself, not defendant's alleged gross negligence in fighting it." *Dean I*, 262 Mich App at 61 (GRIFFIN, J., *dissenting in part*) (cleaned up). Our Supreme Court subsequently held that the adoption of such analysis and conclusion was erroneous and overruled *Dean II*. *Ray*, 501 Mich at 71. The Court reasoned:

> Determining proximate cause under the GTLA, or elsewhere, does not entail the weighing of factual causes but instead assesses the legal responsibility of the actors involved. Moreover, because proximate cause is concerned with the foreseeability of consequences, only a human actor's breach of a duty can be a proximate cause. Consequently, nonhuman and natural forces, such as a fire, cannot be considered "the proximate cause" of a plaintiff's injuries for the purposes of the GTLA. Instead, these forces bear on the question of foreseeability, in that they may constitute superseding causes[6] that relieve the actor of liability if the intervening force was not reasonably foreseeable. [*Id*. at 71-72 (cleaned up).]

The *Beals* Court concluded that, similar to *Dean I*, the lifeguard's failure to intervene in the "already initiated drowning [did] not transform [the lifeguard's] inaction into the proximate cause of the [swimmer's] death." *Beals*, 497 Mich at 376. As indicated, *Dean II*, which adopted the conclusion and reasoning of Judge GRIFFIN's dissent in *Dean I*, was overruled by *Ray*, 501 Mich at 72 n 49. Although our Supreme Court rejected the analogy to *Dean I* in *Beals*, the Court upheld the portion of the *Beals* analysis that was "consistent with the principle that a government actor's conduct cannot be 'the proximate cause' of one's injuries without being a factual cause thereof." *Id*. Additionally, the *Ray* Court noted that the brief discussion of *Dean* in *Beals* "was not necessary to [the Court's] ultimate conclusion that the lifeguard was not 'the proximate cause' because factual causation could not be established." *Id*. In interpreting *Beals* in *Ray*, our Supreme Court explained:

> *Beals* is best understood as holding that the lifeguard could not have been 'the proximate cause' of the decedent's drowning because the plaintiff failed to show even a genuine issue of factual causation. When a plaintiff attempts to establish factual causation circumstantially, that circumstantial proof must go beyond mere speculation. The plaintiff in *Beals* failed to make this showing. We emphasized that any connection between the lifeguard's breach of a duty and the drowning was only speculative. We also noted that it was unclear that even a prudent lifeguard

---

[6] Our Supreme Court has recognized "intervening cause" or "superseding cause" to mean "one which actively operates in producing harm to another after the actor's negligent act or omission has been committed." *McMillian v Vliet*, 422 Mich 570, 576; 374 NW2d 679 (1985) (cleaned up); see *Ray*, 501 Mich at 72 n 48. Such a cause "breaks the chain of causation and constitutes a superseding cause which relieves the original actor of liability, unless it is found that the intervening act was 'reasonably foreseeable.' " *McMillian* 422 Mich at 576 (cleaned up).

would have been able to observe and prevent the deceased's drowning, which further illustrated that the causal connection was simply too tenuous. In other words, the plaintiff failed to show that the lifeguard was a but-for cause of the deceased's death. Accordingly, we held that the defendant lifeguard was not "the proximate cause" of the deceased's death for the purposes of the GTLA. The holding, if not all of the reasoning, of *Beals* is consistent with our understanding of the GTLA's use of "the proximate cause." [*Ray*, 501 Mich at 70-71 (cleaned up).]

Similar to *Beals*, as recognized in *Ray*, plaintiff in the instant case has failed to establish that defendant's conduct or inaction was the proximate cause of McGriff's death. Plaintiff postulates, as any grieving parent would, that McGriff would not have died had defendant conducted a more thorough search of the kitchen. However, plaintiff has not provided any evidence suggesting that McGriff was still alive when defendant arrived at the house, searched the house, or left the house, or that defendant could have rescued McGriff from the fire. Just as in *Beals*, speculation that defendant could have saved McGriff is insufficient to establish that defendant was the factual and, therefore, proximate cause of McGriff's death, especially considering that defendant did not search the kitchen until *after* the fire was extinguished. See *Ray*, 501 Mich at 70; *Beals*, 497 Mich at 374. Further, defendant cannot be considered the "most immediate, efficient, and direct cause" of McGriff's death because he did not cause McGriff to be in the house during the fire or initiate the fire. *Beals*, 497 Mich at 373. As recognized in *Ray*, plaintiff in the instant case has failed to show that defendant was a "but-for cause of the deceased's death." *Ray*, 501 Mich at 71. The record contains no evidence indicating why McGriff remained in the house at the time of the fire. Whatever may have been that "unidentified reason," however, was a much more immediate and direct cause of his death than defendant's failure to locate him *after* the fire was extinguished. *Beals*, 497 Mich at 373.

Given defendant's extensive search of the house and that numerous other firefighters also failed to locate McGriff's body during their own searches, it was not foreseeable that defendant's conduct could have resulted in McGriff's death. *Ray*, 501 Mich at 64-65. Therefore, defendant's conduct could not have been the proximate cause of McGriff's death because it was not a "but-for cause" or "the one most immediate, efficient and direct cause" of his death, even if it was a contributing factor. *Id*. at 65. For that reason, defendant was entitled to governmental immunity.

## III. CONCLUSION

Defendant owed no duty to plaintiff or McGriff, there was no question of fact as to whether his conduct was grossly negligent, and his conduct was not the proximate cause of McGriff's death. For these reasons, he was entitled to governmental immunity under the GTLA. Consequently, the trial court erred in denying summary disposition to defendant.

Reversed and remanded for entry of an order granting summary disposition in favor of defendant. Defendant, being the prevailing party, may tax costs pursuant to MCR 7.219. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen